

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2005 AUG -5 PM 1: 34

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

WILLIE J. LASTER,               )
                                )
            Plaintiff,          )
                                )
    v.                          )        CV 304-016
                                )
TONYA KEMP, et al.,             )
                                )
            Defendants.         )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff Willie J. Laster, a *pro se* litigant, commenced this civil action pursuant to

42 U.S.C. § 1983. The matter is now before the Court on Defendants' motion for summary

judgment. (Doc. no. 87).[1] For the reasons stated more fully below, the Court **REPORTS**

---

[1]According to the Scheduling Notice issued on November 22, 2004, the deadline for filing motions for summary judgment was January 25, 2005. Plaintiff did not file his own motion for summary judgment by January 25th, but on February 7, 2005, he requested an extension of time to respond to Defendants' motion. (Doc. no. 93). On February 11, 2005, the Court granted Plaintiff an extension until March 14, 2005 to file his response to Defendants' motion. (Doc. no. 95). On March 10, 2005, Plaintiff submitted several documents, variously titled "Opposition to Defendants' Motion for Summary Judgment," "Brief in Support of Motion for Summary Judgment," and "Declaration in Support of Plaintiff's Motion for Summary Judgement." (See doc. nos. 97, 99). However, based on the Scheduling Notice governing the case and the Order granting Plaintiff an extension of time to file a response to Defendants' motion, Plaintiff's summary judgment briefing can only be considered by the Court as opposition to Defendants' motion.

However, given that the Court is recommending that summary judgment be granted to Defendants, the semantics of the titles on Plaintiff's filings need not delay the Court. Moreover, as the Court is authorized to control its own docket by imposing deadlines in a case, see Fed. R. Civ. P. 16(b), the Court is not constrained to consider Plaintiff's opposition papers as a motion.

and **RECOMMENDS** that Defendants' motion be **GRANTED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Defendants. Specifically, all of Plaintiff's claims, save the failure to provide specialized shoes, should be **DISMISSED** without prejudice, and Defendants should be **GRANTED** summary judgment on the merits of Plaintiff's claim regarding specialized shoes.

## I. FACTS

At all times relevant to this lawsuit, Plaintiff was incarcerated at Dodge State Prison ("DSP") in Chester, Georgia. Plaintiff signed and dated his original complaint on January 23, 2004.[2] After Plaintiff had finished amending his pleadings and after those pleadings had been screened pursuant to 28 U.S.C. § 1915A, three Defendants remained: Tonya Kemp, David McNeal, and Barry Henderson.[3] At all times relevant to this lawsuit, these three Defendants held the following positions at DSP: Health Services Administrator, Deputy Warden of Security, and Medical Director, respectively. The Court sanctioned Eighth Amendment claims for deliberate indifference to a serious medical need and inhumane conditions of confinement, as well as a First Amendment retaliation claim, against these

---

[2]Plaintiff's case was originally filed in the Northern District of Georgia against eleven defendants, including James Donald, Commissioner of the Georgia Department of Corrections. However, Commissioner Donald was dismissed by Order of the Honorable Orinda D. Evans, United States District Judge, and the case was then transferred to this Court. Laster v. Donald, 1:04-CV-0500-ODE (N.D. Ga. Mar. 5, 2004). The papers filed in the Northern District are contained in this Court's files prior the Court's March 18, 2004 Order granting Plaintiff permission to proceed *in forma pauperis*.

[3]Plaintiff originally identified Dr. Henderson as Richard Henderson. However, based on the affidavit submitted by Dr. Henderson with the summary judgment briefing, it appears that his correct name is Barry Henderson. The **CLERK** is **DIRECTED** to correct the docket accordingly.

three Defendants. (Doc. no. 52, p. 4). Plaintiff also alleged that Defendants committed the state laws torts of negligence and assault.

Plaintiff suffers from chronic back pain. Prior to his arrival at DSP in 2001, a doctor at Augusta State Medical Prison had issued orders that Plaintiff be allowed to sit in a hard-back chair. However, when Plaintiff arrived at DSP, he was not immediately given a new profile for a hard-back chair. Plaintiff filed a grievance, Number 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, complaining that he had been deprived of a needed hard-back chair, and as a result of that grievance, he was provided with the requested chair, which he kept until September of 2003. (Doc. no. 89, Ex. I, Grievance No. 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 (*hereinafter*, "Grievance 0047"). At that time Plaintiff's profile for a hard-back chair expired, and the chair was removed from his two-man cell as part of the implementation of a new policy at DSP; chairs not bolted to the floor were removed because inmates had been using chairs to attack each other. (Doc. no. 89, Ex. E, McNeal Aff. ¶¶ 2, 5; Tab 1 of N.D. Ga. papers). Neither Defendant Henderson or Kemp, as the Medical Director and Health Services Administrator respectively, had any input into the policy requiring the removal of Plaintiff's hard-back chair, and they were not consulted prior to, and did not participate in, the removal of Plaintiff's chair. (Henderson Aff. ¶ 18, Kemp Aff. ¶ 5). Plaintiff maintains that his chair was removed not because of safety concerns, but because he began filing grievances, as well as assisting other inmates with filing complaints, against prison officials. (Doc. no. 97, Br., p. 9).

Although Plaintiff apparently wrote letters concerning the confiscation of his chair (Tab 1 of N.D. Ga. papers), he did not file a grievance about the removal of his chair when his profile expired in September of 2003. Then, in January of 2004, Plaintiff was transferred

3

from DSP to Sumter County Jail for the purpose of participating in court proceedings regarding Felony Murder and Firearm Possession charges.[4] (Doc. no. 71, Order of Chief Judge R. Rucker Smith, Southwestern Judicial Cir., dated Jan. 8, 2004). Plaintiff commenced the above-captioned lawsuit, originally filed in the Northern District of Georgia on February 19, 2004, while he was out to the Sumter County Jail.

Plaintiff remained at Sumter County Jail until May of 2004, when he was returned to DSP; upon his return, Plaintiff was assigned to the Q Building, a large open dormitory. (McNeal Aff.¶¶ 4, 6). Plaintiff was not permitted to have a hard-back chair and housing assignment to a two-man cell that he wanted, but the Warden at DSP, Don Jarriel, permitted Plaintiff to have a hard-back chair bolted to floor next to his bottom bunk in the Q-Building. (Id.). Plaintiff did not like the location of the chair - approximately ten feet from the bathroom entrance and fifteen feet from the nearest urinal (with a partial wall between the chair and urinals) - and sought injunctive relief from the Court.[5] (Doc. no. 12; McNeal Aff. ¶ 7). Defendant McNeal inspected the location of the chair and did not find it to be in an unsanitary location; moreover, he determined that the chair could not have been bolted to the floor in a two-man cell as Plaintiff had requested because the cells are too small and because the chair would have been an impediment to fleeing in case of fire. (McNeal Aff. ¶ 7).

The only grievance of record specifically addressing Plaintiff's hard-back chair filed after he returned from Sumter County Jail was signed by Plaintiff on May 17, 2004 and

---

[4]On June 2, 2003, the Supreme Court of Georgia reversed Plaintiff's convictions on murder and firearms charges from 1995 and remanded the case for a new trial. Laster v. State, 276 Ga. 645, 581 S.E.2d 522 (2003).

[5]The request for injunctive relief was denied. (Doc. no. 77).

4

concerned an altercation with a Lt. Mullis about sitting in a chair in a hallway while other inmates went to yard call; the grievance did not raise the issue of the location or sanitary conditions of the chair that had been bolted to the floor by Plaintiff's bunk. (Doc. no. 97, Ex. 25, Grievance No. 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, *hereinafter,* "Grievance 0115"). Plaintiff did, however, sign a grievance on July 2, 2004, that complained about needing specialized shoes and being housed in an area with "atmospheric contamination." (Doc. no. 97, Ex. 2, Grievance No. 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, *hereinafter*, "Grievance 0135").

Plaintiff's medical records are voluminous and well-documented. (Doc. no. 89, Ex. B, Medical Records). Dr. Henderson first saw Plaintiff in July of 2002 for a soft shoe profile renewal and visual complaint; at that time; his profile for a hard-back chair (as described above, a result of the resolution of Grievance 0047) was also renewed for six months. (Doc. no. 89, Ex. A, Henderson Aff. ¶ 4). The issue of Plaintiff's soft shoes soon became a source of contention, leading to the filing of grievance. (Doc. no. 89, Ex. J, Grievance No. 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, *hereinafter*, "Grievance "0260"). In that grievance, signed September 25, 2002, Plaintiff complained about not being seen by a podiatrist and about inflammation in his joints as a result of worn-out specialized shoes.[6] (Id.). Plaintiff had a podiatry consultation on November 20, 2002, and Dr. Henderson followed up with a request on December 4, 2002 that the padded shoes requested in the podiatry consultation be provided. (Doc. no. 89, Ex. B, Medical Records, Consultation Requests dated Sept. 25 and Dec. 4, 2002).

---

[6]Notably, Plaintiff had refused tennis shoes on September 19, 2002. (Doc. no. 89, Refusal of Treatment dated Sept. 19, 2002).

Dr. Henderson continued to see Plaintiff throughout 2003 for complaints of back pain, and in December of 2003, scheduled Plaintiff for an "ortho consult." (Henderson Aff. ¶ 13). Plaintiff was out to Sumter County Jail when his orthopedic consultation appointment date arrived, so he was not seen by an orthopedic doctor until June 4, 2004. (Id. ¶ 15). Thereafter, he was approved for epidural injections for his back pain. (Doc. no. 89, Ex. B, Consultation Request dated Aug. 19, 2004).

Defendants deny that they violated Plaintiff's rights. They argue that they are entitled to summary judgment on the merits of Plaintiff's claims, on the basis of qualified immunity, and because Plaintiff failed to satisfy the requirements of the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), including the requirement that he exhaust his administrative remedies prior to commencing suit in federal court.

According to the affidavit of Deryl Canady, the Assistant Director of Inmate Affairs and Appeals for the Georgia Department of Corrections, Plaintiff filed three grievances regarding his medical care at DSP: Grievance 0047, Grievance 0260, and Grievance 0135. (Doc. no. 89, Ex. G, Canady Aff. ¶ 5). Plaintiff did not file any grievance concerning removal of his hard-back chair in September 2003 or its replacement thereafter. (Id. ¶ 6). Nor did Plaintiff file any grievance about alleged retaliation by Defendants as a result of his filing grievances or pursuing litigation. (Id.). With respect to exhausting the available grievance procedures, the Georgia Department of Corrections ("GDC") Standard Operating Procedure ("SOP") governing administrative remedies provides that if an inmate is dissatisfied with the Warden's response to a grievance, his final level of appeal is to the Office of the Commissioner of the GDC. (Doc. no. 89, Ex. H, SOP IIB05-0001).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[7] <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the <u>movant</u>, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428, 1438 (11th Cir. 1991) (<i>en banc</i>). On the other hand, if the <u>non-moving</u> party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. <u>Clark</u>, 929 F.2d at 606-08 (explaining <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970) and <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. <u>Clark</u>, 929 F.2d at 608. Evidence presented by the

---

[7]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." <u>McCormick v. City of Fort Lauderdale</u>, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

## III. DISCUSSION

### A.    Failure to Exhaust Administrative Remedies

42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." Furthermore, 42 U.S.C. § 1997e(c)(1) provides that the Court shall dismiss any action brought under 42 U.S.C. § 1983 concerning prison conditions if the action fails to state a claim upon which relief can be granted on its own motion or the motion of a party. In the Eleventh Circuit, "[a] claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may

8

be granted." Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998); see also Moore v. Smith, 18 F. Supp. 2d 1360, 1362 (N.D. Ga. 1998) (finding that a prisoner lawsuit in which the denial of a grievance was not appealed must be dismissed under § 1997e).

Furthermore, the Eleventh Circuit Court of Appeals has held that as a result of the PLRA, § 1997e requires that all claims be submitted to the prison grievance procedure "even if the relief offered by that program does not appear to be 'plain, speedy, and effective,' before filing those claims in federal court. The judicially created futility and inadequacy doctrines do not survive the PLRA's mandatory exhaustion requirement." Alexander v. Hawk, 159 F.3d 1321, 1328 (11th Cir. 1998). The Court no longer has discretion to waive the exhaustion requirement.[8] Id. at 1325; see also Brown v. Hobbs, No. 03-14966, slip op. at 3 (11th Cir. Mar. 11, 2004) (finding that "exhaustion is mandatory" in prisoner lawsuit alleging deliberate indifference). Indeed, the Supreme Court has clarified "that § 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002).

### 1.    Deliberate Indifference to a Serious Medical Need:  Hard-Back Chair

One of Plaintiff's Eighth Amendment claims for deliberate indifference to a serious medical need revolves around the removal of his hard-back chair that provided some relief for the pain in his lower back. Both the amended complaint and deposition testimony make clear that Plaintiff blames Dr. Henderson, Defendant Kemp, and Defendant McNeal for

---

[8]Suits regarding "prison conditions" include claims "with respect to the conditions of confinement or the effects of action by government officials on the lives of persons confined in prison." Higginbottom v. Carter, 223 F.3d 1259, 1260 (11th Cir. 2000)(*per curiam*). Accordingly, Plaintiff's complaints regarding his medical treatment and housing assignment are subject to the administrative exhaustion requirements.

refusing to provide a hard-back chair when his profile expired in September 2003 through the time that he went to Sumter County Jail in January of 2004.[9] (Doc. no. 31, Amd. Compl., ¶¶ 3, 4, 6; doc. no. 90, Pl.'s Depo., pp. 14-16).

Here, Defendants have submitted the sworn affidavit of Deryl Canady, the Assistant Director of Inmate Affairs and Appeals for the Georgia Department of Corrections, detailing Plaintiff's grievance history. (Doc. no. 89, Ex. G, Canady Aff.). Prior to filing this lawsuit, Plaintiff filed Grievance 0047 complaining that he had been deprived of a hard-back chair to ease the pain in his back. (Doc. no. 89, Ex. I). Following the filing of that grievance, Plaintiff received a hard-back chair, which he kept until September of 2003. However, once the chair was taken away in September 2003, Plaintiff did not file another grievance about sitting in a chair until May 17, 2004, Grievance 0115 (regarding an altercation with a Lieutenant about sitting in a chair in a hallway while other inmates went to yard call) - after he returned from the Sumter County Jail and approximately four months after he commenced this lawsuit. (Doc. no. 97, Ex. 25). Grievance 0135, dated July 2, 2004, complained about needing specialized shoes and being housed in an area with "atmospheric contamination." (Doc. no. 97, Ex. 2). Neither of these grievances were filed, let alone allowed to proceed to exhaustion at the Commissioner's Office, prior to the commencement of the lawsuit. Thus, Plaintiff did not exhaust the issue of the failure to renew his profile and removal of his chair in September of 2003 prior to commencing this lawsuit, and therefore these claims are not properly before the Court.

---

[9]Plaintiff's deliberate indifference claims as they relate to his specialized shoes, claims that were administratively exhausted, are discussed in Part III.B, *infra*.

Plaintiff's only response to Defendants' argument on this point is that once the hard-back chair was provided as a result of Grievance 0047, he had a "contract right" to the chair, and therefore he exhausted his administrative remedies. (Doc. no. 97, p. 10). The Court disagrees. That Plaintiff was provided a hard-back chair when he had a valid profile for one and prior to the institution of a new policy prohibiting chairs that were not bolted to floor does not excuse him from administratively challenging the expiration of that profile or the appropriateness of the new policy in light of his back condition. Plaintiff did not exhaust his administrative remedies about the removal of his chair in September of 2003 prior to the commencement of this lawsuit, and therefore he has not satisfied the requirements of the PLRA.[10]

## 2. Inhumane Conditions of Confinement

Likewise, Plaintiff failed to exhaust his administrative remedies concerning the placement of his hard-back chair in the Q-dormitory upon his return from the Sumter County Jail in May 2004. Grievance 0135, dated July 2, 2004, complained about needing specialized shoes and being housed in an area with "atmospheric contamination." (Doc. no. 97, Ex. 2).

---

[10]Pretermitting the argument that Plaintiff filed Grievance 0115 and/or Grievance 0135 prior to the time he filed his amended complaint on July 8, 2004, Eleventh Circuit case law is clear that administrative remedies must be exhausted prior to the commencement of a lawsuit. Amending allegations of exhaustion into a complaint after it has been filed is not sufficient. Harris v. Garner, 216 F.3d 970, 973 -76 (11th Cir. 2000) (discussing necessity of meeting PLRA requirements for filing at time lawsuit is commenced, not as circumstances of case evolve). Moreover, to the extent Plaintiff may assert that the amendment provisions of Rule 15 allow him to add allegations of exhaustion, that argument also fails. Id. at 982 (rejecting argument of conflict between Rule 15 and PLRA but recognizing that even if there were a conflict, the Rule must yield to the later-enacted statute).

According to Mr. Canady's affidavit, this grievance was not denied by the Commissioner's Office until September 9, 2004. (Canady Aff. ¶ 5).

Plaintiff's only attempt to refute the exhaustion requirement on this point is the argument that because he was a pre-trial detainee at the time he returned to DSP (by virtue of the Georgia Supreme Court reversing and remanding his criminal case in <u>Laster v. State</u>, 276 Ga. 645 (2003)), the PLRA and its exhaustion requirement should not apply to him. (Doc. no. 97, p. 10). The Court disagrees. 28 U.S.C. § 1915(h) provides that in cases where prisoners are proceeding *in forma pauperis*, as Plaintiff here, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." Thus, regardless of Plaintiff's status as a pre-trial detainee facing murder and firearms charges or as a convicted felon, he is subject to the exhaustion requirement of the PLRA. <u>Cf.</u> <u>Troville v. Venz</u>, 303 F.3d 1256, 1260 (11th Cir. 2002) (*per curiam*) (relying on statutory definition to determine who qualifies as prisoner subject to various provisions of PLRA). Therefore, as Plaintiff failed to exhaust his administrative remedies on this issue prior to the commencement of this lawsuit, Defendants are entitled to summary judgment on this issue.

### 3.    Retaliation

The final issue on which Defendants are entitled to summary judgment on the basis of a failure to exhaust is the First Amendment claim for retaliation. Plaintiff claims that his chair was taken in September of 2003 and that he was placed in an undesirable dormitory and location therein upon his return from the Sumter County Jail in retaliation for complaining

12

about the conditions of confinement at DSP. (Doc. no. 31, Amd. Compl., ¶ 6; Pl.'s Depo., p. 16; doc. no. 97, p. 9). However, the only mention of alleged retaliation in any grievance in the record is in Grievance 0135. As discussed above, Plaintiff did not sign and date this grievance until July 2, 2004 (doc. no. 97, Ex. 2), and the appeal was not denied by the Commissioner's Office until September 9, 2004. (Canady Aff. ¶ 5). Thus, Plaintiff did not exhaust his administrative remedies on this issue prior to commencing this lawsuit, and Defendants are entitled to summary judgment.

## B. Deliberate Indifference to a Serious Medical Need: Specialized Shoes

Plaintiff has also complained about a failure to promptly replace specialized shoes. (Doc. no. 31, Amd. Compl., ¶¶ 3, 4, 6). These claims were administratively exhausted in Grievance 0260, the appeal of which was denied by the Commissioner's Office on February 11, 2003. Thus, the Court turns its attention to the substance of this portion of Plaintiff's Eighth Amendment claim.

A prisoner's claim of deliberate indifference to serious medical needs must satisfy both an objective and a subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To state the proposition differently, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk. Id. at 835-39. Deliberate indifference that would violate the Eighth Amendment requires that Plaintiff show Defendants knew about and disregarded an excessive risk to his health or safety. See id. at 837. When subjectively weighing whether a defendant has been deliberately indifferent, the courts require a plaintiff to show "more than mere negligence," and look for "obduracy and wantonness, not inadvertence or error in

good faith." Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995). Moreover, "[e]vidence must support a conclusion that a prison physician's harmful acts were intentional or reckless." Hinson v. Edmond, 192 F.3d 1342, 1345 (11th Cir. 1999), *amended on other grounds*, 205 F.3d 1264 (11th Cir. 2000).

Every claim by a prisoner of inadequate medical treatment does not equate to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 105 (1976). Writing for the majority, Justice Marshall observed:

> [A]n inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Id. at 105-06.

Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999) (explaining that medical malpractice cannot form the basis for Eighth Amendment liability); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). Furthermore, the Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris, 941 F.2d at 1510 (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980)(Bowen, J.)). Neither does a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment support a

claim of cruel and unusual punishment. Harris, 941 F.2d at 1505; Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989). That is, the burden of proving deliberate indifference cannot be met simply by arguing that an inmate wanted a different type of treatment. Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments. . . . Id. (citation omitted)).

Here, Plaintiff has presented nothing more than a difference of opinion over the proper type of shoes needed, and often those shoes should be replaced, given Plaintiff's chronic back pain. The denial of the appeal on Grievance 0260 states that Plaintiff's request for a "shoe plate" had been investigated but that the medical department/staff had acted appropriately in its treatment of Plaintiff's foot condition. (Doc. no. 89, Ex. J). The medical records are clear that Plaintiff had been diagnosed as needing specialized shoes. Dr. Henderson avers that the first time he saw Plaintiff was on July 23, 2002 for a soft shoe (tennis shoe) renewal [of profile].[11] (Henderson Aff. ¶ 4). When Plaintiff was again seen by Dr. Henderson on August 7, 2002, he advised Plaintiff that his soft shoe profile was in progress. (Id.). However, Plaintiff refused the tennis shoes offered to him on September 19, 2002. (Id. ¶5; doc. no. 89, Ex. B, Refusal of Treatment dated Sept. 19, 2002). On September 25, 2002, medical records show that a request was again made for specialized shoes. (Ex. B, Progress Record, Medical-Dental, dated Sept. 25, 2002). On November 20, 2002, a podiatry consultation confirmed that Plaintiff needed padded sneakers. (Id., Report of

---

[11]When Plaintiff was issued tennis shoes on January 16, 2002, he signed an acknowledgment that the shoes must last six months to one year. (Doc. no. 89, Ex. B, DSP Acknowledgment of Receipt of Tennis Shoes).

Consultation dated Nov. 20, 2002).[12]  On November 21, 2002, Plaintiff received padded insoles for his shoes. (Id., DSP Acknowledgment of Receipt of Size 12-13 Insoles). Plaintiff accepted a pair of tennis shoes on December 30, 2002. (Id., DSP Acknowledgment of Receipt of Size 13 Tennis Shoes).

According to copies of correspondence by Plaintiff, his tennis shoes again wore out in November of 2003. (Doc. no. 97, Ex. 28). He was apparently approved for replacement shoes upon his return from Sumter County Jail in May of 2004.[13] (Id.). He received new tennis shoes on June 22, 2004, but again refused arch supports on September 1, 2004. (Doc. no. 89, Ex. B, DSP Acknowledgment of Receipt of Size 13 Tennis Shoes, dated June 22, 2004, Refusal of Treatment Against Medical Advice, dated Sept. 1, 2004).

Thus, it appears that Plaintiff has received tennis shoes to ease the pain from his back condition, but he has not always preferred supplemental measures (such as arch supports) that were provided in place of the steel plate he apparently wanted. However, Plaintiff has presented no evidence that the requested steel plate was a medical necessity rather than a preferred course of treatment. Moreover, as Defendants point out in their briefing, Plaintiff received extensive medical care for his back as part of a comprehensive treatment plan. (Doc. no. 87, Br., p. 14). Thus, Plaintiff's shoes were but one aspect of the on-going care

---

[12]The Court notes that numbering the pages of Plaintiff's medical record would have been an immense help in creating efficient citations to the record.

[13]The January 8, 2004 Order of Chief Judge Smith specifically stated the Sheriff of Sumter County or his lawful deputy would assume custody of Plaintiff from the Department of Corrections. (Doc. no. 71, Order dated Jan.8, 2004). Thus, Defendants, working at a GDC facility, could not possibly be held accountable for the treatment and/or Plaintiff may have received while in the Sumter County Jail.

Plaintiff was receiving. The medical record of evidence shows medical recommendations for soft shoes/tennis shoes, and those shoes were provided. Although they may not have been provided as quickly as Plaintiff would have preferred when his old shoes began to wear out, there is nothing to suggest that any of Defendants ignored Plaintiff's needs. To the contrary, the medical records document that Dr. Henderson was regularly requesting replacement shoes, and at one point, it was Plaintiff's refusal to accept shoes in September of 2002 that prolonged his wait for new shoes.

The Court must also note that neither Defendant Kemp or Defendant McNeal was responsible for providing hands-on medical treatment for Plaintiff. (Kemp Aff. ¶ 3; McNeal Aff. ¶ 8). Thus, to the extent Plaintiff's complaints about his shoes stem from a belief that Dr. Henderson or some other member of the medical staff mistreated or mis-diagnosed his condition and/or recommended improper treatment in the form of tennis shoes rather than steel plates, these two Defendants cannot be held liable for those decisions.

In sum, there is simply no evidence that any Defendant intentionally or recklessly acted in a harmful manner toward Plaintiff. Although Plaintiff may not agree with the course of treatment afforded to him, the facts indicate that he received continuing and constitutionally sufficient care for his medical condition.[14] Thus, there are no genuine issues

---

[14]As noted previously, Plaintiff suffers from chronic back pain. Much of Plaintiff's summary judgment briefing and exhibits focus on the speed with which he was seen by an orthopedic specialist upon his return from Sumter County Jail (the original consult requested by Dr. Henderson having been missed because Plaintiff was not in GDC custody) and whether DSP officials adequately implemented the orthopedic specialist's treatment suggestions. (See doc. nos. 97-99). However, as with the issue of removing the hard-back chair in September of 2003, the issue of Plaintiff's medical care upon his return from Sumter County Jail in May of 2004 was not administratively grieved prior to commencement of this lawsuit. Grievance 0260 dealt specifically with a podiatry referral and request for a shoe

17

of material fact with respect to providing Plaintiff with specialized shoes, and Defendants are entitled to summary judgment.

## C.     Dismissal of State Law Claims

Finally, Plaintiff's amended complaint alleged that Defendants had committed the state law torts of negligence and assault. This Court derives its authority to decide Plaintiff's § 1983 federal claims from 28 U.S.C. § 1331, which provides that district courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal courts are given the additional power to exercise supplemental jurisdiction over state law claims which "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, § 1367(c)(3) states that "[t]he district courts may <u>decline</u> to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction. . . ." <u>Id.</u> § 1367(c)(3) (emphasis added).

The Eleventh Circuit has explicitly advised that a district court is well within its discretion to dismiss state law claims once the basis for original federal court jurisdiction no longer exists:

> At this time, the case retains no independent basis for federal jurisdiction. . . . A proper resolution of the two state law causes of action will require a careful analysis of Alabama law--something the courts of Alabama are in the best position to undertake and, for reasons of federalism, should undertake. . . . We conclude that the district court should dismiss the state law claims so that Appellee may pursue them in state court.

---

plate. (Doc. no. 89, Ex. J). Moreover, the progression of determining that Plaintiff needed an orthopedic consultation was but one aspect of the comprehensive, on-going treatment plan that DSP medical officials had formulated in an effort to address Plaintiff's chronic pain.

Nolin v. Isbell, 207 F.3d 1253, 1258 (11th Cir. 2000); see also Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 951 n.26 (11th Cir. 1997) ("After dismissing Panama's federal claims against the . . . defendants, the district court correctly dismissed its remaining state law claims against these defendants."); Rice v. Branigar Org., Inc., 922 F.2d 788, 792 (11th Cir. 1991) (recognizing that trial court's decision to exercise pendant jurisdiction over state law claims is discretionary).

Here, the Court has recommended that Defendants be granted summary judgment because Plaintiff failed to comply with the requirements of 42 U.S.C. § 1997e(a) for commencing a lawsuit in federal court and because Defendants are entitled to summary judgment on the merits of Plaintiff's claims regarding providing specialized shoes. Stated another way, the Court has recommended judgment in favor of Defendants on the majority of Plaintiff's claims because Plaintiff failed to perform the requisite steps for challenging prison conditions under federal law, the original basis for the exercise of federal jurisdiction. As the Court has advised that the claims serving as the basis for original federal court jurisdiction be dismissed and that the only remaining federal claim be denied on the merits, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's state law claims be **DISMISSED** without prejudice so that Plaintiff may, if he desires, attempt to pursue those claims in the Georgia courts.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion be **GRANTED**, that this civil action be **CLOSED**, and that a final

judgment be **ENTERED** in favor of Defendants.[15] Specifically, all of Plaintiff's claims, save the failure to provide specialized shoes, should be **DISMISSED** without prejudice, and Defendants should be **GRANTED** summary judgment on the merits of Plaintiff's claim regarding specialized shoes.

SO REPORTED and RECOMMENDED this 5th day of August, 2005, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[15] Because of the Court's determination of the issues analyzed *supra*, the Court does not reach the remaining grounds enumerated in Defendants' motion for summary judgment.

# United States District Court
## *Southern District of Georgia*

ATTORNEYS SERVED:

Willie J. Laster, Pro-se
Andrew M. Magruder, Esq.
Jesse W. Owen, Esq.

CASE NO:        CV304-016

DATE SERVED:  August 5, 2005

SERVED BY:     Cindy Reynolds

☐   Copy placed in Minutes

☐   Copy given to Judge

☑   Copy given to Magistrate